E-filing

1 BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP
Alan R. Plutzik, Of Counsel (Bar No. 077758)
2 L. Timothy Fisher, Of Counsel (Bar No. 191626)
2125 Oak Grove Road, Suite 120
3 Walnut Creek, CA 94598
Telephone: (925) 945-0770
4 Facsimile: (925) 945-8792

5
*Attorneys for Plaintiffs*
6
7 [Additional Counsel Appear on Signature Page]

ORIGINAL FILED
DEC 17 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

8 **UNITED STATES DISTRICT COURT**

9 **NORTHERN DISTRICT OF CALIFORNIA**

ADR

| | |
|---|---|
| 10 TERRENCE POPYK, Individually and On Behalf<br>11 of All Others Similarly Situated,<br>12 Plaintiff,<br>13 vs.<br>14<br>15 TALEO CORPORATION, MICHAEL<br>GREGOIRE, KATY MURRAY and DIVESH<br>16 SISODRAKER,<br>17<br>18 Defendants. | CIVIL ACTION NO.<br>**C08-05634** PJH<br><br>CLASS ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

19      Plaintiff, Terrence Popyk ("Plaintiff"), alleges the following based upon the investigation by

20 Plaintiff's counsel, which included, among other things, a review of the defendants' public

21 documents, conference calls and announcements made by defendants, United States Securities and

22 Exchange Commission ("SEC") filings, wire and press releases published by and regarding Taleo

23 Corporation ("Taleo" or the "Company"), securities analysts' reports and advisories about the

24 Company, and information readily available on the Internet, and Plaintiff believes that substantial

25 additional evidentiary support will exist for the allegations set forth herein after a reasonable

26 opportunity for discovery.

27

28

COPY

**NATURE OF THE ACTION AND OVERVIEW**

1.      This is a federal class action on behalf of purchasers of Taleo's securities between October 4, 2005 and November 10, 2008, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Taleo provides talent management solutions to organizations which enables its client to acquire, develop and align their workforces for improved business performance. More than 3,800 organizations use Taleo, including 47 of the Fortune 100 and over 3,000 small and medium sized businesses, for talent acquisition and performance management, in 200 countries and territories.

3.      On November 10, 2008, the Company shocked investors when it announced that it would delay filing its third quarter financial results due to the fact that its auditors requested that the Company "re-evaluate whether the company's historical and current practices with respect to the timing for recognition of application and consulting revenues were appropriate under generally accepted accounting principles." The Company stated that it was in the process of determining whether an alternative accounting treatment should be used. The Company further elaborated by revealing that the questions were "whether our policy that delivery of our software solutions has occurred when access to the software is provided to the customer is correct," and "whether our policy that our consulting services have standalone value is correct." The Company revealed that a change in either of the policies "could impact the timing of our recognition of application and consulting revenue."

4.      Upon the release of this news, the Company's shares fell $3.22 per share, or 29.14 percent, to close on November 11, 2008 at $7.83 per share, on unusually heavy trading volume.

5.      The Complaint alleges that, throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being, business relationships, and prospects. Specifically, defendants failed to disclose or indicate the following: (1) that since the time of its IPO, the Company had reported financial results that included revenues that should have been reported in later financial periods; (2) that as a result, the Company's revenues were overstated in the reported periods; (3) that the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (4) that the Company lacked adequate

-2-

CLASS ACTION COMPLAINT

1 internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial
2 statements were materially false and misleading at all relevant times.

3      6.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in
4 the market value of the Company's securities, Plaintiff and other Class Members have suffered
5 significant losses and damages.

6                                   **JURISDICTION AND VENUE**

7      7.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the
8 Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R.
9 § 240.10b-5).

10      8.     This Court has jurisdiction over the subject matter of this action pursuant to Section
11 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

12      9.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act,
13 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein,
14 including the preparation and dissemination of materially false and misleading information, occurred
15 in substantial part in this Judicial District. Additionally, Taleo's principal executive offices are
16 located within this Judicial District.

17      10.     In connection with the acts, conduct and other wrongs alleged in this Complaint,
18 defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,
19 including but not limited to, the United States mails, interstate telephone communications and the
20 facilities of the national securities exchange.

21                                             **PARTIES**

22      11.     Plaintiff, Terrence Popyk, as set forth in the accompanying certification, incorporated
23 by reference herein, purchased Taleo's securities at artificially inflated prices during the Class Period
24 and has been damaged thereby.

25      12.     Defendant Taleo is a Delaware corporation with its principal executive offices located
26 at 4140 Dublin Boulevard, Suite 400, Dublin, California.

27      13.     Defendant Michael Gregoire ("Gregoire") was, at all relevant times, the Company's
28 President and Chief Executive Officer ("CEO").

14.     Defendant Katy Murray, a.k.a. Mary K. Murray ("Murray") was, at relevant times, the Company's Chief Financial Officer ("CFO").

15.     Defendant Divesh Sisodraker ("Sisodraker") was, at relevant times, the Company's CFO.

16.     Defendants Gregoire, Murray and Sisodraker are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Taleo's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Taleo provides talent management solutions to organizations which enables its client to acquire, develop and align their workforces for improved business performance. More than 3,800 organizations use Taleo, including 47 of the Fortune 100 and over 3,000 small and medium sized businesses, for talent acquisition and performance management, in 200 countries and territories.

18.     On August 15, 2005, the Company filed a Quarterly Report with the SEC on Form 10-Q.  Therein, the Company stated, in relevant part:

> Our condensed consolidated financial statements are prepared in accordance with accounting principles generally accepted in the United States, or GAAP.
>
>                *        *        *

Total revenue was $19.3 million in the three months ended June 30, 2005 as compared to $14.8 million in the three months ended June 30, 2004, an increase of $4.5 million, or 30%. Application revenue was $15.1 million in the three months ended June 30, 2005, as compared to $12.2 million in the three months ended June 30, 2004, an increase of $2.8 million, or 23%. The increase in revenue was attributable to increased sales of our applications, including sales to new customers and additional sales to our current customers, mainly due to demand for our Taleo Professional as well as our recently enhanced Taleo Hourly solutions. Consulting revenue was $4.2 million in the three months ended June 30, 2005, as compared to $2.6 million in the three months ended June 30, 2004, an increase of $1.6 million, or 62%. The increase in consulting revenue is attributable to an increase in the number of employees providing these services and to an increased utilization and billing rates of our consultants.

19.    On September 29, 2005, the Company filed a Prospectus with the SEC. Therein, the Company stated, in relevant part:

Our revenue has grown sequentially in each full year that we have been in existence, totaling $28.4 million, $43.6 million and $58.7 million in each of 2002, 2003 and 2004, respectively.

**Materially False and Misleading**
**Statements Issued During the Class Period**

20.    The Class Period begins on October 4, 2005. On this day, the Company completed its Initial Public Offering ("IPO"). The IPO was a financial success for the Company, as it was able to raise $93.8 million by selling 6.7 million shares of common stock to investors at a price of $14.00 per share.

21.    On April 17, 2006, Taleo filed its Annual Report with the SEC on Form 10-K. The Company's 10-K was signed by Defendant Sisodraker, and, in relevant part, stated:

*Our consolidated financial statements are prepared in accordance with accounting principles generally accepted in the United States, or GAAP.*

\*        \*        \*

*Consulting revenue is accounted for separately from our application revenue because these consulting services have value to the customer that is independent of our applications. Additionally, we have objective evidence of the fair value of these consulting services.* Our consulting engagements are typically billed on a time

- 5 -
CLASS ACTION COMPLAINT

and materials basis, although a lesser number of our consulting and implementation engagements are priced on a fixed-fee basis. For those contracts structured on a fixed fee basis, we recognize the revenue proportionally to the performance of the services, utilizing milestones if present in the arrangement or hours incurred if milestones are not present. Our management uses its judgment concerning the estimation of the total costs to complete these fixed-fee contracts, considering a number of factors including the complexity of the project, and the experience of the personnel that are performing the services.

*       *       *

*We experienced a period of rapid growth in our operations, which has placed, and will continue to place, a significant strain on our management, administrative, operational, technical and financial infrastructure. For example, in 2005 we completed an acquisition which added a new product line, became an SEC reporting company, completed our initial public offering and increased revenues from $58.7 million to $78.4 million. To manage our growth, we will need to continue to improve our operational, financial, and management processes and controls and our reporting systems and procedures.* [Emphasis added.]

22.     The Company's 10-K, filed on April 17, 2006, also contained Sarbanes-Oxley required certifications, signed by Defendants Gregoire and Sisodraker, who stated:

I, [Michael Gregoire/Divesh Sisodraker], certify that:

1.      I have reviewed this Annual Report on Form 10-K of Taleo Corporation;

2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

(a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(c)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

*       *       *

I, [Michael Gregoire/Divesh Sisodraker], certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that the Annual Report of Taleo Corporation on Form 10-K for the fiscal year ended December 31, 2005 fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that information contained in such Form 10-K fairly presents in all material respects the financial condition and results of operations of Taleo.

- 7 -

23.     On April 18, 2006, the Company issued a press release entitled "Taleo Announces Fourth Quarter and Year Ended 2005 Financial Results."   The press release confirmed the Company's financial results announced on April 17, 2006, and stated, in relevant part:

> Taleo Corporation (Nasdaq: TLEO), the leading provider of on demand talent management solutions, today announced financial results for its fiscal fourth quarter and year ended December 31, 2005.
>
> "We are very pleased with the company's performance for the fourth quarter and full year 2005, which was highlighted by record revenue and customer acquisition results," said Michael Gregoire, president and CEO, Taleo. "The demand for talent management is building, and our leadership position and proven track record of customer success sets Taleo apart in the market place."
>
> Gregoire added, "We are encouraged by the level of demand we see, and we are continuing to invest to capitalize on what we believe is a large, rapidly growing market opportunity. We recently announced a major new product release and several new solutions including a Taleo branded background and identity verification solution that we are delivering with a partner. We have increased our R&D efforts to further extend our leadership position and expand our addressable market."
>
> Taleo delivered the following results for the fourth quarter and year ended December 31, 2005:
>
> ***Revenue: Total revenue for the fourth quarter was $21.0 million, an increase of 39% on a year-over-year basis.*** Recurring application revenues for the fourth quarter were $17.2 million, an increase of 36% on a year-over-year basis.
>
> ***For the year ended December 31, 2005, total revenue was $78.4 million, an increase of 34%,*** while recurring application revenue was $63.3 million, an increase of 29%.
>
> ***Net Income and Earnings per Share: Net income (loss) in accordance with Generally Accepted Accounting Principles in the United States, or GAAP, was $0.3 million for the fourth quarter, compared to a net loss of $2.0 million for the same period last year. For the year ended December 31, 2005, net loss was $2.5 million, compared to a net loss of $5.7 million in 2004.*** [Emphasis added.]

24.     On February 15, 2007, the Company issued a press release entitled "Taleo Reports Strong Fourth Quarter and Fiscal Year End 2006 Financial Results."   Therein, the Company, in relevant part, stated:

CLASS ACTION COMPLAINT

Taleo Corporation (Nasdaq: TLEO), the leading provider of on demand talent management solutions, today announced financial results for its fourth quarter and fiscal year ended December 31, 2006.

Business Highlights Include:

- Record new customer acquisition; doubling the number of customers from the previous year

- *Record revenues of $97.0 million for 2006, an increase of 24% year-over-year*

- *Q4 2006 GAAP net income of $892,000*

- Improved balance sheet strength

"2006 was a pivotal year for Taleo as we continued to build a solid foundation and expanded our market share as the leader in Talent Management solutions. We remain focused on execution and are pleased with our strong organic growth, record quarterly customer acquisition, financial progress and ability to deliver increased customer value and improved business performance to our customers," stated Michael Gregoire, president and CEO of Taleo.

"Looking ahead to 2007, we will broaden and deepen our solutions toward a full Talent Management Suite of integrated applications built on our leading platform. We are very encouraged by the business trends that we are witnessing in both the enterprise and SMB end markets. We intend to capitalize on our technology leadership, strong channel relationships and international investments to take advantage of the opportunity at hand," concluded Gregoire.

Taleo delivered the following results for the fourth quarter and year ended December 31, 2006:

- *Revenue: Total revenue for the fourth quarter was $26.5 million, representing an increase of 26% on a year-over-year basis. Recurring application revenue for the fourth quarter was $21.6 million, an increase of 26% on a year-over-year basis. For the year ended December 31, 2006, total revenue was $97.0 million, an increase of 24%, while recurring application revenue was $79.1 million, an increase of 25% over the prior year.*

- *Net Income/Loss and Income/(Loss) Per Share to Common Stockholders: Net income in accordance with accounting principles generally accepted in the United States, or GAAP, was $0.9 million for the fourth quarter, compared to a net loss of $77,000 for the same period last year.* Net income for

CLASS ACTION COMPLAINT

the fourth quarter and year ended December 31, 2006 includes share-based compensation expense of $1.1 million and $4.5 million, respectively, pursuant to the adoption on January 1, 2006 of Financial Accounting Standards Board (FASB) Statement No. 123R, "Share-Based Payment" (SFAS 123R), which requires companies to expense the fair value of employee stock options and similar stock based compensation awards. Net income per fully diluted share was $0.03 for the fourth quarter of 2006 based on 25.8 million weighted average shares outstanding compared to net loss per fully diluted share of $(0.00) for the same period in 2005 based on 18.2 million weighted average shares outstanding. For the year ended December 31, 2006, net loss was $2.3 million, compared to a net loss of $5.5 million for the year ended December 31, 2005. Net loss per fully diluted share was $(0.11) for the year ended December 31, 2006 based on 20.0 million weighted average shares outstanding compared to net loss per fully diluted share of $(1.19) for the year ended December 31, 2005 based on 4.6 million weighted average shares outstanding.

- Non-GAAP Net Income/(Loss) and Non-GAAP Income/Loss Per Share: Non-GAAP net income, which excludes restructuring costs and other charges, loss on disposal of fixed assets, stock compensation expense, share-based compensation expense pursuant to SFAS 123R, amortization of acquired intangibles, fees for early retirement of indebtedness, write off of unamortized indebtedness fees, net adjustment for tax valuation allowances, and accretion of dividends and issuance costs on preferred stock, was $1.9 million for the fourth quarter of 2006, compared to a non-GAAP net income of $1.3 million in the same period last year. Non-GAAP net income per fully diluted share was $0.07 for the fourth quarter of 2006 based on 25.8 million weighted average shares outstanding compared to non-GAAP net income per fully diluted share of $0.05 for the same period in 2005 based on 24.7 million weighted average shares outstanding.

For the year ended December 31, 2006, non-GAAP net income was $3.3 million, compared to non-GAAP net income of $1.9 million for the year ended December 31, 2005. Non-GAAP net income per fully diluted share was $0.13 for the year ended December 31, 2006 based on 25.6 million weighted average shares outstanding compared to non-GAAP net income per fully diluted share of $0.09 for the year ended December 31, 2005 based on 20.3 million weighted average shares outstanding. [Emphasis added.]

25.    On March 16, 2007, Taleo filed its Annual Report with the SEC on Form 10-K. The Company's 10-K was signed by Defendant Murray, and reaffirmed the Company's financial results previously announced on February 15, 2007. The Company's 10-K also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶ 22, *supra*, with the exception being that they were signed by Defendants Gregoire and Murray. Additionally, the Company, in relevant part, stated:

> ***Our consolidated financial statements are prepared in accordance with accounting principles generally accepted in the United States, or GAAP.***
>
> *                    *                    *
>
> ***Consulting revenue is accounted for separately from our application revenue based on our view that we have objective evidence of the fair value of these consulting services.*** Our consulting engagements are typically billed on a time and materials basis, although a number of our consulting and implementation engagements are priced on a fixed-fee basis. For those contracts structured on a fixed fee basis, we recognize the revenue proportionally to the performance of the services, utilizing milestones if present in the arrangement or hours incurred if milestones are not present. Our management uses its judgment concerning the estimation of the total costs to complete these fixed-fee contracts, considering a number of factors including the complexity of the project, and the experience of the personnel that are performing the services. [Emphasis added.]

26.    On February 6, 2008, the Company issued a press release entitled "Taleo's Record Results for the Fourth Quarter Cap Exceptional Year in 2007." Therein, the Company, in relevant part, stated:

> Taleo (Nasdaq:TLEO), the leading provider of on demand talent management solutions, today announced financial results for the fourth quarter and fiscal year ended December 31, 2007. Taleo achieved numerous milestones in 2007 establishing new records for revenues, profits, application backlog, cash flows, and number of new Enterprise and SMB customers. Taleo also introduced ground-breaking new products, increased penetration of the SMB market and expanded business internationally, making 2007 the strongest year in the company's history.
>
> Business Highlights Include:

- 11 -

- *Record revenues of $128.0 million for 2007, an increase of 32% year-over-year.*

- *Quarterly record revenues of $34.5 million for the fourth quarter of 2007, an increase of 30% over the fourth quarter of 2006.*

- Record number of new enterprise customers during the fourth quarter of 2007, with 26 new Taleo Enterprise Edition(tm) customers.

- Customer base grew to over 1,500 customers, including 37 of the Fortune 100 and over 1,200 Taleo Business Edition(tm) customers.

- Application backlog increased to approximately $200 million exiting 2007, increasing over 40% compared to last year.

- *GAAP net income of $3.9 million for the year 2007.* Non-GAAP net income of $13.5 million for the year 2007.

- Cash flow from operations of over $30.1 million for the year ended 2007.

"Our strong performance in the fourth quarter of 2007 provided the perfect finish to a record year for Taleo," stated Michael Gregoire, president and CEO of Taleo. "2007 was a tremendous year for the company. I am extremely proud of our business execution and financial achievement over the course of the year. We continue to realize strong customer demand illustrated by our expanding market share, strong organic growth, record customer acquisition, and improved business fundamentals."

\*       \*       \*

*"Going forward, we are well positioned for the market opportunities that lie ahead.* In 2007, Taleo laid the groundwork for our unified talent management strategy, which in 2008 will result in companies being able to leverage our industry leading platform that unifies enterprise recruiting and performance management. We believe that our innovative solutions, our continued global expansion efforts, and our penetration into new market segments and verticals will drive significant momentum to our business," concluded Gregoire.

Taleo delivered the following results for the fourth quarter and year ended December 31, 2007:

- *Revenue: Total revenue for the fourth quarter was $34.5 million, representing an increase of 30% on a year-over-*

CLASS ACTION COMPLAINT

*year basis. Recurring application revenue for the fourth quarter was $28.4 million, an increase of 31% on a year-over-year basis. For the year ended December 31, 2007, total revenue was $128.0 million, an increase of 32%,* while recurring application revenue was $105.0 million, an increase of 33% over the prior year.

- Net Income / (Loss) and Income / (Loss) Per Share to Common Stockholders: Net income in accordance with accounting principles generally accepted in the United States, or GAAP, was $2.5 million for the fourth quarter, compared to net income of $551,000 for the same period last year. For the year ended December 31, 2007, net income was $3.9 million compared to a net loss of $(2.6) million for the year ended December 31, 2006. Net income per fully diluted share was $0.13 for the year ended December 31, 2007 based on 28.8 million weighted average shares outstanding compared to net loss per fully diluted share of $(0.13) for the year ended December 31, 2006 based on 20.0 million weighted average shares outstanding. Net income for the fourth quarter and year ended December 31, 2007 includes share-based compensation expense of $1.9 million and $6.7 million, respectively, pursuant to the adoption on January 1, 2006 of Financial Accounting Standards Board (FASB) Statement No. 123R, "Share-Based Payment" (SFAS 123R), which requires companies to expense the fair value of employee stock options and similar stock based compensation awards. Net income per fully diluted share was $0.08 for the fourth quarter of 2007 based on 29.5 million weighted average shares outstanding compared to net income per fully diluted share of $0.02 for the same period in 2006 based on 25.8 million weighted average shares outstanding.

- Non-GAAP Net Income and Non-GAAP Income Per Share to Common Stockholders: Non-GAAP net income, which excludes restructuring costs and other charges, loss on disposal of fixed assets, share-based compensation expense pursuant to SFAS 123(R), amortization of acquired intangibles, and non-cash income tax and tax valuation adjustments, was $4.2 million for the fourth quarter of 2007, compared to $1.5 million in the same period last year. Non-GAAP net income per fully diluted share was $0.14 for the fourth quarter of 2007 based on 29.5 million weighted average shares outstanding compared to non-GAAP net income per fully diluted share of $0.06 for the same period in 2006 based on 25.8 million weighted average shares outstanding. For the year ended December 31, 2007, non-GAAP net income was $13.5 million, compared to non-GAAP net income of $2.9 million for the year ended

CLASS ACTION COMPLAINT

December 31, 2006. Non-GAAP net income per fully diluted share was $0.47 for the year ended December 31, 2007 based on 28.8 million weighted average shares outstanding compared to non-GAAP net income per fully diluted share of $0.11 for the year ended December 31, 2006 based on 25.6 million weighted average shares outstanding. [Emphasis added.]

27.     On March 14, 2008, Taleo filed its Annual Report with the SEC on Form 10-K. The Company's 10-K was signed by Defendant Murray, and reaffirmed the Company's financial results previously announced on February 6, 2008. The Company's 10-K also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶ 22, *supra,* with the exception being that they were signed by Defendants Gregoire and Murray. Additionally, the Company, in relevant part, stated:

> ***Our consolidated financial statements are prepared in accordance with accounting principles generally accepted in the United States, or GAAP.***

> \*       \*       \*

> Consulting revenue consists primarily of fees associated with application configuration, integration, business process re-engineering, change management, and education and training services. Our consulting engagements are typically billed and recognized on a time-and-materials basis, although in some instances we sell consulting services under milestone or fixed-fee contracts and, in those cases, we recognize consulting revenues on the lower of the milestone or a percentage of completion basis.

> ***In arrangements that include both subscription and consulting services we recognize consulting services as they are performed if the consulting services qualify as a separate unit of accounting in the multiple element arrangement. Consulting services qualify as a separate unit of accounting when they have stand alone value and when fair value has been established. If the consulting services do not qualify as a separate unit of accounting, the related consulting revenues are combined with the subscription revenues and recognized ratably over the subscription term.*** [Emphasis added.]

28.     On May 6, 2008, the Company issued a press release entitled "Taleo Reports Strong Results for First Quarter 2008." Therein, the Company, in relevant part, stated:

- 14 -

Taleo (NASDAQ: TLEO), the leading provider of on demand talent management solutions, today announced record financial results for the first quarter ended March 31, 2008.

Quarterly Highlights Include:

- *Record revenues of $37.2 million for the first quarter of 2008, an increase of 30% year-over-year, and 8% quarter over quarter.*

- Customer base grew to over 1,700 customers with more than 1.2 million users.

"Our strong first quarter results build on the momentum we established in 2007 as we continue to see demand for our talent management solutions from companies of all sizes across the globe," stated Michael Gregoire, president and CEO of Taleo. "To extend our ability to meet this demand, today we announced a definitive agreement to acquire Vurv Technology, Inc., a privately held talent management company with more than 1,700 customers across the globe."

Other significant achievements during the first quarter 2008 include:

- Acquired 197 new customers. Corporate demand for Taleo's talent management solutions continued with the company signing 197 new customers in Q1 bringing Taleo's customer base to over 1,700 organizations around the world. New customers included Burns & McDonnell, CIBER, InfoPrint Solutions Company and Vail Resorts.

- Achieved significant international growth. International revenues grew by 52% over the same period last year and represented 11% of total revenues. New international customers included Merck KGaA, Renault SA and TuV SuD Asia Pacific Pte Ltd.

\*       \*       \*

"During the first quarter, we expanded our unified talent management platform beyond recruiting with the addition of Taleo Performance and extended our reach further into the SMB and international markets," said Gregoire. "Our proven ability to execute, build innovative solutions and expand our global market coverage gives us a solid position as we move through 2008."

Taleo delivered the following results for the first quarter ended March 31, 2008:

CLASS ACTION COMPLAINT

> ***Revenue:** Total revenue for the first quarter was $37.2 million, representing an increase of 30% on a year-over-year basis.* Application revenue for the first quarter was $30.2 million, an increase of 28% on a year-over-year basis.
>
> Net Income and Net Income Per Share to Common Stockholders: Net income in accordance with accounting principles generally accepted in the United States, or GAAP, was $1.6 million for the first quarter, compared to net income of $0.9 million for the same period last year. Net income for the first quarter of 2008 and 2007 includes share-based compensation expense of $2.5 million and $1.4 million, respectively, pursuant to the adoption on January 1, 2006 of Financial Accounting Standards Board (FASB) Statement No. 123(R), "Share-Based Payment" (SFAS 123(R)), which requires companies to expense the fair value of employee stock options and similar stock based compensation awards. Net income per fully diluted share was $0.06 for the first quarter of 2008 based on 28.9 million weighted average shares outstanding compared to net income per fully diluted share of $0.03 for the same period in 2007 based on 26.0 million weighted average shares outstanding.
>
> Non-GAAP Net Income and Non-GAAP Net Income Per Share: Non-GAAP net income, which excludes share-based compensation expense pursuant to SFAS 123(R), amortization of acquired intangibles, and non-cash income tax and tax valuation adjustments was $3.9 million for the first quarter of 2008, compared to a non-GAAP net income of $2.3 million in the same period last year. Non-GAAP net income per fully diluted share was $0.14 for the first quarter of 2008 based on 28.9 million weighted average shares outstanding compared to non-GAAP net income per fully diluted share of $0.09 for the same period in 2007 based on 26.0 million weighted average shares outstanding. [Emphasis added.]

29. On May 12, 2008, Taleo filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by Defendant Murray, and reaffirmed the Company's financial results previously announced on May 6, 2008. Additionally, the Company, in relevant part, stated:

> Our unaudited condensed consolidated financial statements are prepared in accordance with accounting principles generally accepted in the United States, or GAAP.

30. The Company's 10-Q also contained Sarbanes-Oxley required certifications, which stated:

> I, [Michael Gregoire/Katy Murray], certify that:
>
> 1. I have reviewed this Quarterly Report on Form 10-Q of Taleo Corporation;

- 16 -

CLASS ACTION COMPLAINT

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)     Designed such internal control over financial reporting, or caused such internal control over financial report to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

CLASS ACTION COMPLAINT

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)      All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

                              *          *          *

I, [Michael Gregoire/Katy Murray], certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that the Quarterly Report of Taleo Corporation on Form 10-Q for the three months ended March 31, 2008 fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that information contained in such Form 10-Q fairly presents in all material respects the financial condition and results of operations of Taleo Corporation.

31.      On July 31, 2008, the Company issued a press release entitled "Taleo Reports Strong Second Quarter 2008 Results." Therein, the Company, in relevant part, stated:

Taleo (NASDAQ: TLEO), the leading provider of on demand talent management solutions, today announced financial results for the second quarter ended June 30, 2008.

Quarterly Highlights Include:

- ***Record revenues of $38.8 million for the second quarter of 2008, an increase of 25% year-over-year.***

- Signed over 225 new customers, an all-time high.

- Signed definitive agreement to acquire Vurv.

- ***GAAP net income of $1.1 million, or $0.04 per fully diluted share.***

- Non-GAAP net income of $4.2 million, or $0.15 per fully diluted share.

- 18 -

CLASS ACTION COMPLAINT

- Customer base grew to over 1,900 customers with more than 1.5 million users.

"Taleo achieved record performance across the organization, posted record revenues, and set a record for the number of new customers. Our results highlight both the growing demand for talent management solutions in large and small companies regardless of the economic environment," stated Michael Gregoire, Chairman and CEO of Taleo. "I am also proud that we were able to perform at this level, while simultaneously working on closing our acquisition of Vurv. Taleo's ability to innovate and execute has helped enhance our leadership position."

Other significant achievements during the second quarter 2008 include:

- Acquired 25 New Taleo Enterprise Edition(TM) Customers. Demand for Taleo's talent management solutions continued with the Company signing 25 new enterprise customers bringing Taleo's customer base to over 350 organizations around the world.  New Taleo Enterprise Edition(TM) customers in North America included AT&T, Adobe, Allergan, Avanade, Blue Cross Blue Shield of Michigan, CSX Transportation, Cymer, Enterprise Product Partners, Harris Teeter, Herbalife, Manpower, Plantronics, The Nielsen Company and US Foodservice.

- ***Achieved Significant International Growth. Revenues from outside of North America grew by 83% over the same period last year and represented 13% of total revenues.*** New international customers included Cargotec, Veolia, AirFrance, Baloise, Eiffage, Manpower and Vic Roads.

\*       \*       \*

"Subsequent to the close of the second quarter, we completed the acquisition of Vurv, bolstering Taleo's leadership position in talent management. Vurv brings additional scale, resources and expertise to meet the growing demand for Taleo's solutions. Together we look forward to bringing innovative new offerings to market and defining the future of talent management," concluded Michael Gregoire, Chairman and CEO of Taleo.

Taleo delivered the following results for the second quarter ended June 30, 2008:

***Revenue: Total revenue for the second quarter was $38.8 million, representing an increase of 25% on a year-over-year basis.***

CLASS ACTION COMPLAINT

*Application revenue for the second quarter was $30.9 million, an increase of 21% on a year-over-year basis.*

Net Income (Loss) and Net Income (Loss) Per Share to Common Stockholders: Net income in accordance with accounting principles generally accepted in the United States, or GAAP, was $1.1 million for the second quarter, compared to a net loss of ($1.8) million for the same period last year, driven primarily from the recording of a net, non-cash income tax reserve of $2.9 million. Net income for the second quarter of 2008 and 2007 includes share-based compensation expense of $2.8 million and $1.6 million, respectively, pursuant to the adoption on January 1, 2006 of Financial Accounting Standards Board (FASB) Statement No. 123(R), "Share-Based Payment" (SFAS 123(R)), which requires companies to expense the fair value of employee stock options and similar stock based compensation awards. Net income per fully diluted share was $0.04 for the second quarter of 2008 based on 29.1 million weighted average shares outstanding compared to net loss per fully diluted share of ($0.07) for the same period in 2007 based on 23.9 million weighted average shares outstanding.

Non-GAAP Net Income and Non-GAAP Net Income Per Share: Non-GAAP net income, which excludes share-based compensation expense pursuant to SFAS 123(R), amortization of acquired intangibles, restructuring charges, non-cash income tax reserve, and non-cash tax valuation adjustments was $4.2 million for the second quarter of 2008, compared to a non-GAAP net income of $2.8 million in the same period last year. Non-GAAP net income per fully diluted share was $0.15 for the second quarter of 2008 based on 29.1 million weighted average shares outstanding compared to non-GAAP net income per fully diluted share of $0.10 for the same period in 2007 based on 28.2 million weighted average shares outstanding. [Emphasis added.]

32.     On August 11, 2008, Taleo filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by Defendant Katy, and reaffirmed the Company's financial results previously announced on July 31, 2008.  The Company's 10-Q also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶ 30, *supra*. Additionally, the Company, in relevant part, stated:

*Our unaudited condensed consolidated financial statements are prepared in accordance with accounting principles generally accepted in the United States, or GAAP.*

\*     \*     \*

*In arrangements that include both subscription and consulting services we recognize consulting services as they are performed if the consulting services qualify as a separate unit of accounting in the multiple element arrangement.* Consulting services qualify as a separate unit of accounting when they have stand alone value and when fair value has been established. If the consulting services do not qualify as a separate unit of accounting, the related consulting revenues are combined with the subscription revenues and recognized ratably over the subscription term. [Emphasis added.]

33.     The statements contained in ¶¶ 20-32 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that since the time of its IPO, the Company had reported financial results that included revenues that should have been reported in later financial periods;  (2) that as a result, the Company's revenues were overstated in the reported periods; (3) that the Company's financial statements were not prepared in accordance with GAAP; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

34.     On November 10, 2008, the Company shocked investors when it issued a press release entitled "Taleo Delays Quarterly Financial Report; Announces Re-Evaluation of Timing of Revenue Recognition." Therein, the Company stated, in relevant part:

Taleo Corporation (NASDAQ: TLEO) announced today that it has filed a notification with the Securities and Exchange Commission, relating to the late filing of the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2008, which will not be filed by its due date of November 10, 2008.

*On November 6, 2008, Deloitte & Touche LLP, the company's independent registered public accounting firm, requested that the company re-evaluate whether the company's historical and current practices with respect to the timing for recognition of application and consulting revenues were appropriate under generally accepted accounting principles in the United States, or GAAP. As a result, Taleo is reviewing the issues raised by its auditors to determine if an alternative accounting treatment should be adopted. Taleo has delayed the filing of its quarterly report on Form 10-Q pending the outcome of its review.*

CLASS ACTION COMPLAINT

*"Our auditors have asked us to re-evaluate the timing of certain elements of our revenue recognition,"* said Mike Gregoire, Chairman and CEO of Taleo. "This is a timing issue, and does not impact the total amount of revenue that Taleo has under contract. Taleo continues to accelerate along many vectors, as we develop innovative new products, penetrate new markets domestically and internationally, and build a platform and community that will define the future of Talent Management. In addition, our customers will continue to receive the same high level of software, services and support from Taleo that they have in the past."

*"Our long standing revenue recognition policies have been in place since at least the time of our initial public offering,"* said Katy Murray, Taleo Chief Financial Officer. *"Our auditors have requested a re-evaluation of these policies. Accordingly, management, under the direction of the Audit Committee, has commenced a review process,"* she continued. *"While this is a complicated area, in summary the questions are (1) whether our policy that delivery of our software solutions has occurred when access to the software is provided to the customer is correct, and (2) whether our policy that our consulting services have standalone value is correct. A change in either policy could impact the timing of our recognition of application and consulting revenue.* It is important to note that this process does not in any way question the validity of our customer contracts or the total amount of revenue to be recognized, but only the timing of the periods in which revenue is recognized," stated Ms. Murray. *"At this time, it is our view that if any changes are made to our revenue recognition practices, it would generally result in the deferral of revenue from earlier periods to later periods,"* she continued.

Taleo delivers its software solutions through an on-demand, or software-as-a-service, delivery model, through which Taleo's customers access and use Taleo's software solutions through an internet connection and a web browser. Taleo's customers pay a recurring subscription fee for the right to access and use Taleo's software applications. *With respect to its software solutions, Taleo recognizes subscription revenue ratably over the term of its agreements. Taleo has taken the position that delivery of its software solutions occurs on the initial access date to the software solution, which is the point in time that a customer is provided access to the on-demand application suite. Based on that determination, the company generally begins recognizing application revenue from the initial access date to the software solution, a practice which the company believes is common in the industry.*

Taleo's software subscription agreements often include contemporaneous sales of consulting services, which may include

business process re-engineering, change management, configuration of Taleo's software solutions to reflect customer business processes and integration of Taleo solutions to third party solutions. Taleo has taken the position that its time and materials consulting services have standalone value and fair value and, thus, it is appropriate to recognize revenue for these services as the services are performed.

*Taleo has consistently applied the methodology for recognition of application and consulting revenue described above since its initial public offering in September 2005 and before,* and has engaged the same independent registered public accounting firm, who have opined on our financial statements, for all relevant periods.

The re-evaluation of Taleo's revenue recognition practices is not related to a change in Taleo's business practices or circumstances, including Taleo's recent acquisition of Vurv Technology, Inc., a change to GAAP, or a change in audit firms or audit partners, but instead arises purely from *a re-assessment of the application of certain elements of GAAP to the company's historical and current revenue recognition practices in the course of a quarterly review.* Further, if adopted, the proposed changes would impact only the timing of revenue recognition from period to period and, potentially, the timing of recognition of related expenses. The proposed changes would not impact the company's cash or accounts receivable position, but would, if adopted, impact cash flow from operations on a period by period basis given the potential impact to net income / (loss) in each period as well as deferred revenue.

*Taleo is currently evaluating the scope of this re-evaluation and does not expect to be able to file its quarterly report on Form 10-Q for the quarter ended September 30, 2008, until this review is complete.*

*As a result of the delay in filing its Form 10-Q for the third quarter of 2008, Taleo expects to receive notification from the NASDAQ Stock Market that it is not in compliance with the filing requirements for continued listing on NASDAQ.* [Emphasis added.]

35.   On this news, the Company's shares fell $3.22 per share, or 29.14 percent, to close on November 11, 2008 at $7.83 per share, on unusually heavy trading volume.

## TALEO'S VIOLATION OF GAAP RULES
## IN ITS FINANCIAL STATEMENTS
## FILED WITH THE SEC

36.   These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with

CLASS ACTION COMPLAINT

1  GAAP, nor was the financial information a fair presentation of the Company's operations due to the

2  Company's improper accounting for, and disclosure about its revenues, in violation of GAAP rules.

3      37.     GAAP are those principles recognized by the accounting profession as the

4  conventions, rules and procedures necessary to define accepted accounting practice at a particular

5  time. Regulation S-X (17 C.F.R. § 210.4 01(a) (1)) states that financial statements filed with the SEC

6  which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate.

7  Regulation S-X requires that interim financial statements must also comply with GAAP, with the

8  exception that interim financial statements need not include disclosure which would be duplicative

9  of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

10     38.     Given these accounting irregularities, the Company announced financial results that

11 were in violation of GAAP and the following principles:

12          (a)     The principle that "interim financial reporting should be based upon the same

13                  accounting principles and practices used to prepare annual financial

14                  statements" was violated (APB No. 28, ¶10);

15          (b)     The principle that "financial reporting should provide information that is

16                  useful to present to potential investors and creditors and other users in

17                  making rational investment, credit, and similar decisions" was violated

18                  (FASB Statement of Concepts No. 1, ¶34);

19          (c)     The principle that "financial reporting should provide information about the

20                  economic resources of an enterprise, the claims to those resources, and

21                  effects of transactions, events, and circumstances that change resources and

22                  claims to those resources" was violated (FASB Statement of Concepts No. 1,

23                  ¶40);

24          (d)     The principle that "financial reporting should provide information about an

25                  enterprise's financial performance during a period" was violated (FASB

26                  Statement of Concepts No. 1, ¶42);

27          (e)     The principle that "financial reporting should provide information about how

28                  management of an enterprise has discharged its stewardship responsibility to

- 24 -

CLASS ACTION COMPLAINT

owners (stockholders) for the use of enterprise resources entrusted to it" was violated (FASB Statement of Concepts No. 1, ¶50);

(f)   The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, ¶¶ 58-59);

(g)   The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, ¶79); and

(h)   The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, ¶95).

39.   The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased Taleo's securities between October 4, 2005 and November 10, 2008, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

41.   The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Taleo's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may

1    be identified from records maintained by Taleo or its transfer agent and may be notified of the

2    pendency of this action by mail, using the form of notice similar to that customarily used in

3    securities class actions.

4         42.    Plaintiff's claims are typical of the claims of the members of the Class as all members

5    of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is

6    complained of herein.

7         43.    Plaintiff will fairly and adequately protect the interests of the members of the Class

8    and has retained counsel competent and experienced in class and securities litigation.

9         44.    Common questions of law and fact exist as to all members of the Class and

10   predominate over any questions solely affecting individual members of the Class.  Among the

11   questions of law and fact common to the Class are:

12        (a)    whether the federal securities laws were violated by defendants' acts as

13               alleged herein;

14        (b)    whether statements made by defendants to the investing public during the

15               Class Period misrepresented material facts about the business, operations and

16               management of Taleo; and

17        (c)    to what extent the members of the Class have sustained damages and the

18               proper measure of damages.

19        45.    A class action is superior to all other available methods for the fair and efficient

20   adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

21   damages suffered by individual Class members may be relatively small, the expense and burden of

22   individual litigation make it impossible for members of the Class to individually redress the wrongs

23   done to them.  There will be no difficulty in the management of this action as a class action.

24                          **UNDISCLOSED ADVERSE FACTS**

25        46.    The market for Taleo's securities was open, well-developed and efficient at all

26   relevant times.  As a result of these materially false and misleading statements, and failures to

27   disclose, Taleo's securities traded at artificially inflated prices during the Class Period.  Plaintiff and

28   other members of the Class purchased or otherwise acquired Taleo's securities relying upon the

1  integrity of the market price of Taleo's securities and market information relating to Taleo, and have
2  been damaged thereby.

3      47.   During the Class Period, defendants materially misled the investing public, thereby
4  inflating the price of Taleo's securities, by publicly issuing false and misleading statements and
5  omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not
6  false and misleading.  Said statements and omissions were materially false and misleading in that
7  they failed to disclose material adverse information and misrepresented the truth about the Company,
8  its business and operations, as alleged herein.

9      48.   At all relevant times, the material misrepresentations and omissions particularized in
10  this Complaint directly or proximately caused or were a substantial contributing cause of the
11  damages sustained by Plaintiff and other members of the Class.  As described herein, during the
12  Class Period, defendants made or caused to be made a series of materially false or misleading
13  statements about Taleo's financial well-being, business relationships, and prospects. These material
14  misstatements and omissions had the cause and effect of creating in the market an unrealistically
15  positive assessment of Taleo and its financial well-being, business relationships, and prospects, thus
16  causing the Company's securities to be overvalued and artificially inflated at all relevant times.
17  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff
18  and other members of the Class purchasing the Company's securities at artificially inflated prices,
19  thus causing the damages complained of herein.

20                              **LOSS CAUSATION**

21      49.   Defendants' wrongful conduct, as alleged herein, directly and proximately caused the
22  economic loss suffered by Plaintiff and the Class.

23      50.   During the Class Period, Plaintiff and the Class purchased Taleo's securities at
24  artificially inflated prices and were damaged thereby.  The price of Taleo's securities significantly
25  declined when the misrepresentations made to the market, and/or the information alleged herein to
26  have been concealed from the market, and/or the effects thereof, were revealed, causing investors'
27  losses.

28

1

## SCIENTER ALLEGATIONS

2    51.    As alleged herein, defendants acted with scienter in that defendants knew that the

3 public documents and statements issued or disseminated in the name of the Company were

4 materially false and misleading; knew that such statements or documents would be issued or

5 disseminated to the investing public; and knowingly and substantially participated or acquiesced in

6 the issuance or dissemination of such statements or documents as primary violations of the federal

7 securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of

8 information reflecting the true facts regarding Taleo, their control over, and/or receipt and/or

9 modification of Taleo's allegedly materially misleading misstatements and/or their associations with

10 the Company which made them privy to confidential proprietary information concerning Taleo,

11 participated in the fraudulent scheme alleged herein.

12    52.    Throughout the Class Period, the defendants took advantage of the artificially inflated

13 price of the Company's securities in completing numerous financing activities.  For example, on June

14 5, 2007, the Company completed an offering of 3.06 million shares of its common stock, and

15 received gross proceeds of over $60 million by selling its stock to investors at a price of $19.85 per

16 share.  Then, on July 1, 2008, the Company acquired Vurv Technology, Inc. using cash and 4.1

17 million shares of the Company's stock.

18    53.    Additionally, during the Class Period, and with the Company's securities trading at

19 artificially inflated prices, Company insiders sold 3,585,755 shares of the Company's stock for gross

20 proceeds of $86,613,181, including over $8 million in gross proceeds received by the Individual

21 Defendants.  This trading by Company insiders is evidenced by the following chart:

| Date of Trade | Inside Trader | Number of Shares | Price per Share | Gross Proceeds |
|---|---|---|---|---|
| October 1, 2008 | Hudspith, William Neil | 1,920 | $20.26 | $38,899 |
| October 1, 2008 | Gauvin, Guy | 1,324 | $20.26 | $26,824 |
| October 1, 2008 | Murray, Mary K. | 825 | $20.26 | $16,714 |
| October 1, 2008 | Murray, Mary K. | 3,228 | $20.00 | $64,560 |
| October 1, 2008 | Gregoire, Michael P. | 3,171 | $20.26 | $64,244 |
| September 2, 2008 | Murray, Mary K. | 3,230 | $24.60 | $79,458 |
| August 28, 2008 | Hudspith, William Neil | 7,011 | $25.00 | $175,275 |

| | | | | |
|---|---|---|---|---|
| August 11, 2008 | Tierney, Michael P. | 33,744 | $25.01 | $843,937 |
| August 11, 2008 | Gregoire, Michael P. | 100,000 | $25.00 | $2,500,000 |
| August 1, 2008 | Murray, Mary K. | 3,229 | $20.28 | $65,484 |
| July 1, 2008 | Hudspith, William Neil | 1,280 | $20.24 | $25,907 |
| July 1, 2008 | Gauvin, Guy | 1,324 | $20.24 | $26,797 |
| July 1, 2008 | Murray, Mary K. | 825 | $20.24 | $16,698 |
| July 1, 2008 | Gregoire, Michael P. | 2,234 | $20.24 | $45,216 |
| May 22, 2008 | Schwartz, Jeffrey M. | 391,314 | $20.00 | $7,826,280 |
| May 19, 2008 | Murray, Mary K. | 3,550 | $20.00 | $71,000 |
| April 1, 2008 | Carr, Jeffrey T. | 1,116 | $19.82 | $22,119 |
| April 1, 2008 | Gauvin, Guy | 1,324 | $19.82 | $26,241 |
| April 1, 2008 | Murray, Mary K. | 825 | $19.82 | $16,351 |
| April 1, 2008 | Gregoire, Michael P. | 2,234 | $19.82 | $44,277 |
| February 4, 2008 | Murray, Mary K. | 7,812 | $23.00 | $179,676 |
| January 1, 2008 | Carr, Jeffrey T. | 1,048 | $29.00 | $30,392 |
| January 1, 2008 | Gauvin, Guy | 662 | $29.00 | $19,198 |
| January 1, 2008 | Murray, Mary K. | 524 | $29.00 | $15,196 |
| November 7, 2007 | Schwartz, Jeffrey M. | 26,953 | $29.87 | $805,086 |
| November 6, 2007 | Gauvin, Guy | 3,300 | $30.40 - $31.18 | $102,000 |
| November 6, 2007 | Gauvin, Guy | 8,366 | $29.38 - $30.39 | $250,000 |
| November 6, 2007 | Murray, Mary K. | 231 | $30.95 - $30.97 | $7,151 |
| November 6, 2007 | Murray, Mary K. | 10,699 | $29.90 - $30.93 | $325,000 |
| November 6, 2007 | Murray, Mary K. | 16,694 | $29.06 - $29.88 | $492,000 |
| November 6, 2007 | Murray, Mary K. | 11,563 | $28.56 - $29.03 | $333,000 |
| November 6, 2007 | Schwartz, Jeffrey M. | 10,000 | $29.33 | $293,000 |
| November 6, 2007 | Schwartz, Jeffrey M. | 1,700,000 | $30.95 | $52,615,000 |
| November 2, 2007 | Gregoire, Michael P. | 75,000 | $30.00 | $2,250,000 |
| October 1, 2007 | Carr, Jeffrey T. | 893 | $25.09 | $22,405 |
| October 1, 2007 | Benson, Bradford | 893 | $25.09 | $22,000 |
| October 1, 2007 | Gauvin, Guy | 662 | $25.09 | $17,000 |
| October 1, 2007 | Murray, Mary K. | 446 | $25.09 | $11,000 |
| September 24, 2007 | Gregoire, Michael P. | 75,000 | $25.00 | $1,875,000 |
| July 2, 2007 | Carr, Jeffrey T. | 893 | $23.00 | $21,000 |
| July 2, 2007 | Benson, Bradford | 893 | $23.00 | $21,000 |
| July 2, 2007 | Gauvin, Guy | 662 | $23.00 | $15,000 |
| July 2, 2007 | Murray, Mary K. | 446 | $23.00 | $10,000 |

CLASS ACTION COMPLAINT

| Date | Name | Shares | Price | Total |
|---|---|---|---|---|
| May 23, 2007 | Gauvin, Guy | 20,000 | $20.00 | $400,000 |
| May 8, 2007 | Tetu, Louis | 30,000 | $18.00 | $540,000 |
| May 1, 2007 | Gauvin, Guy | 10,000 | $15.18 - $15.52 | $154,000 |
| April 12, 2007 | Tetu, Louis | 49,308 | $17.00 | $838,000 |
| April 2, 2007 | Carr, Jeffrey T. | 1,048 | $16.97 - $16.97 | $18,000 |
| April 2, 2007 | Benson, Bradford | 1,048 | $16.97 - $16.97 | $18,000 |
| April 2, 2007 | Gauvin, Guy | 662 | $16.97 | $11,000 |
| April 2, 2007 | Murray, Mary K. | 524 | $16.97 | $8,892 |
| April 2, 2007 | Tetu, Louis | 292 | $17.00 | $4,964 |
| April 2, 2007 | Gauvin, Guy | 9,458 | $16.53 - $16.98 | $158,000 |
| March 30, 2007 | Tetu, Louis | 400 | $17.00 | $6,800 |
| March 30, 2007 | Sirois, Charles | 25,000 | $16.34 | $409,000 |
| March 1, 2007 | Gauvin, Guy | 542 | $16.58 - $16.59 | $8,989 |
| March 1, 2007 | Gauvin, Guy | 10,000 | $15.61 - $15.96 | $158,000 |
| February 23, 2007 | Sirois, Charles | 25,000 | $15.30 | $383,000 |
| February 22, 2007 | Tetu, Louis | 75,000 | $16.00 | $1,200,000 |
| February 22, 2007 | Sirois, Charles | 57,000 | $14.77 - $15.02 | $849,000 |
| February 21, 2007 | Sirois, Charles | 43,500 | $14.18 - $14.50 | $624,000 |
| February 20, 2007 | Sirois, Charles | 18,000 | $14.25 | $257,000 |
| February 16, 2007 | Tetu, Louis | 125,000 | $15.00 | $1,875,000 |
| February 16, 2007 | Gauvin, Guy | 10,000 | $15.00 | $150,000 |
| February 1, 2007 | Gauvin, Guy | 1,568 | $14.00 | $22,000 |
| February 1, 2007 | Tetu, Louis | 67,462 | $14.00 | $944,000 |
| January 31, 2007 | Gauvin, Guy | 26,700 | $14.00 | $374,000 |
| January 31, 2007 | Tetu, Louis | 25,900 | $14.00 | $363,000 |
| January 30, 2007 | Gauvin, Guy | 2,600 | $14.00 | $36,000 |
| January 30, 2007 | Tetu, Louis | 2,605 | $14.00 | $36,000 |
| January 25, 2007 | Tierney, Michael P. | 132,232 | $13.23 | $1,749,000 |
| January 24, 2007 | Gauvin, Guy | 100 | $14.00 | $1,400 |
| January 24, 2007 | Tetu, Louis | 100 | $14.00 | $1,400 |
| January 1, 2007 | Carr, Jeffrey T. | 1,048 | $13.20 | $14,000 |
| January 1, 2007 | Benson, Bradford | 1,048 | $13.20 | $14,000 |
| January 1, 2007 | Gauvin, Guy | 662 | $13.20 | $8,738 |
| January 1, 2007 | Murray, Mary K. | 524 | $13.20 | $6,916 |
| December 29, 2006 | Tetu, Louis | 500 | $14.00 | $7,000 |
| December 29, 2006 | Gauvin, Guy | 600 | $14.00 | $8,400 |
| December 28, 2006 | Tetu, Louis | 100 | $14.00 | $1,400 |
| December 28, 2006 | Gauvin, Guy | 100 | $14.00 | $1,400 |
| December 26, 2006 | Tetu, Louis | 500 | $14.00 | $7,000 |
| December 26, 2006 | Gauvin, Guy | 500 | $14.00 | $7,000 |
| December 22, 2006 | Tetu, Louis | 27,833 | $14.00 | $390,000 |

CLASS ACTION COMPLAINT

| | | | | |
|---|---|---|---|---|
| December 22, 2006 | Gauvin, Guy | 27,832 | $14.00 | $390,000 |
| December 20, 2006 | Sirois, Charles | 38,900 | $13.45 | $523,000 |
| December 19, 2006 | Sirois, Charles | 27,100 | $13.30 | $360,000 |
| December 18, 2006 | Sirois, Charles | 2,400 | $13.20 | $32,000 |
| December 7, 2006 | Sirois, Charles | 3,820 | $13.20 | $50,000 |
| December 6, 2006 | Sirois, Charles | 1,780 | $13.20 | $23,000 |
| December 5, 2006 | Sirois, Charles | 26,000 | $12.98 | $337,000 |
| November 30, 2006 | Gauvin, Guy | 50,000 | $13.00 | $650,000 |
| November 22, 2006 | Sirois, Charles | 48,500 | $12.33 | $598.00 |
| November 20, 2006 | Sirois, Charles | 26,500 | $11.95 | $317,000 |
| May 25, 2006 | Maikranz, James D. | 11,111 | $12.50 | $138,899 |
| | **TOTALS:** | **3,585,755** | | **$86,613,181** |

### Applicability of Presumption of Reliance:
### Fraud On The Market Doctrine

54.     At all relevant times, the market for Taleo's securities was an efficient market for the following reasons, among others:

> (a)     Taleo's securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

> (b)     As a regulated issuer, Taleo filed periodic public reports with the SEC and the NASDAQ;

> (c)     Taleo regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

> (d)     Taleo was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

55.     As a result of the foregoing, the market for Taleo's securities promptly digested current information regarding Taleo from all publicly-available sources and reflected such

1   information in the price of Taleo's securities.  Under these circumstances, all purchasers of Taleo's

2   securities during the Class Period suffered similar injury through their purchase of Taleo's securities

3   at artificially inflated prices and a presumption of reliance applies.

4                                        **NO SAFE HARBOR**

5          56.     The statutory safe harbor provided for forward-looking statements under certain

6   circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

7   Many of the specific statements pleaded herein were not identified as "forward-looking statements"

8   when made.  To the extent there were any forward-looking statements, there were no meaningful

9   cautionary statements identifying important factors that could cause actual results to differ materially

10  from those in the purportedly forward-looking statements.  Alternatively, to the extent that the

11  statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are

12  liable for those false forward-looking statements because at the time each of those forward-looking

13  statements was made, the particular speaker knew that the particular forward-looking statement was

14  false, and/or the forward-looking statement was authorized and/or approved by an executive officer

15  of Taleo who knew that those statements were false when made.

16                                         **FIRST CLAIM**
                                  **Violation of Section 10(b) of**
17                              **The Exchange Act and Rule 10b-5**
                       **Promulgated Thereunder Against All Defendants**
18

19         57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set

20  forth herein.

21         58.     During the Class Period, defendants carried out a plan, scheme and course of conduct

22  which was intended to and, throughout the Class Period, did: (i) deceive the investing public,

23  including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other

24  members of the Class to purchase Taleo's securities at artificially inflated prices.  In furtherance of

25  this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set

26  forth herein.

27         59.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue

28  statements of material fact and/or omitted to state material facts necessary to make the statements not

1    misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud

2    and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high

3    market prices for Taleo's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-

4    5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged

5    herein or as controlling persons as alleged below.

6              60.    Defendants, individually and in concert, directly and indirectly, by the use, means or

7    instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

8    continuous course of conduct to conceal adverse material information about Taleo's financial well-

9    being, business relationships, and prospects, as specified herein.

10             61.    These defendants employed devices, schemes and artifices to defraud, while in

11   possession of material adverse non-public information and engaged in acts, practices, and a course of

12   conduct as alleged herein in an effort to assure investors of Taleo's value and performance and

13   continued substantial growth, which included the making of, or the participation in the making of,

14   untrue statements of material facts and omitting to state material facts necessary in order to make the

15   statements made about Taleo and its business operations and future prospects in light of the

16   circumstances under which they were made, not misleading, as set forth more particularly herein,

17   and engaged in transactions, practices and a course of business which operated as a fraud and deceit

18   upon the purchasers of Taleo's securities during the Class Period.

19             62.    Each of the Individual Defendants' primary liability, and controlling person liability,

20   arises from the following facts: (i) the Individual Defendants were high-level executives and/or

21   directors at the Company during the Class Period and members of the Company's management team

22   or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities

23   as a senior officer and/or director of the Company, was privy to and participated in the creation,

24   development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii)

25   each of these defendants enjoyed significant personal contact and familiarity with the other

26   defendants and was advised of, and had access to, other members of the Company's management

27   team, internal reports and other data and information about the Company's finances, operations, and

28   sales at all relevant times; and (iv) each of these defendants was aware of the Company's

1   dissemination of information to the investing public which they knew or recklessly disregarded was

2   materially false and misleading.

3        63.   The defendants had actual knowledge of the misrepresentations and omissions of

4   material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

5   ascertain and to disclose such facts, even though such facts were available to them. Such defendants'

6   material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose

7   and effect of concealing Taleo's financial well-being, business relationships, and prospects from the

8   investing public and supporting the artificially inflated price of its securities.  As demonstrated by

9   defendants' overstatements and misstatements of the Company's financial well-being, business

10  relationships, and prospects throughout the Class Period, defendants, if they did not have actual

11  knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such

12  knowledge by deliberately refraining from taking those steps necessary to discover whether those

13  statements were false or misleading.

14       64.   As a result of the dissemination of the materially false and misleading information

15  and failure to disclose material facts, as set forth above, the market price of Taleo's securities was

16  artificially inflated during the Class Period.  In ignorance of the fact that market prices of Taleo's

17  securities were artificially inflated, and relying directly or indirectly on the false and misleading

18  statements made by defendants, or upon the integrity of the market in which the securities trades,

19  and/or in the absence of material adverse information that was known to or recklessly disregarded by

20  defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff

21  and the other members of the Class acquired Taleo's securities during the Class Period at artificially

22  high prices and were damaged thereby.

23       65.   At the time of said misrepresentations and omissions, Plaintiff and other members of

24  the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other

25  members of the Class and the marketplace known the truth regarding the problems that Taleo was

26  experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class

27  would not have purchased or otherwise acquired their Taleo securities, or, if they had acquired such

28  securities during the Class Period, they would not have done so at the artificially inflated prices

1  which they paid.

2       66.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange

3  Act and Rule 10b-5 promulgated thereunder.

4       67.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the

5  other members of the Class suffered damages in connection with their respective purchases and sales

6  of the Company's securities during the Class Period.

7                  **SECOND CLAIM**
             **Violation of Section 20(a) of**

8       **The Exchange Act Against the Individual Defendants**

9       68.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

10  forth herein.

11       69.    The Individual Defendants acted as controlling persons of Taleo within the meaning

12  of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and

13  their ownership and contractual rights, participation in and/or awareness of the Company's

14  operations and/or intimate knowledge of the false financial statements filed by the Company with the

15  SEC and disseminated to the investing public, the Individual Defendants had the power to influence

16  and control and did influence and control, directly or indirectly, the decision-making of the

17  Company, including the content and dissemination of the various statements which Plaintiff

18  contends are false and misleading.  The Individual Defendants were provided with or had unlimited

19  access to copies of the Company's reports, press releases, public filings and other statements alleged

20  by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the

21  ability to prevent the issuance of the statements or cause the statements to be corrected.

22       70.    In particular, each of these defendants had direct and supervisory involvement in the

23  day-to-day operations of the Company and, therefore, is presumed to have had the power to control

24  or influence the particular transactions giving rise to the securities violations as alleged herein, and

25  exercised the same.

26       71.    As set forth above, Taleo and the Individual Defendants each violated Section 10(b)

27  and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions

28  as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the

1  Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other

2  members of the Class suffered damages in connection with their purchases of the Company's

3  securities during the Class Period.

4       **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

5            (a)   Determining that this action is a proper class action under Rule 23 of the

6                  Federal Rules of Civil Procedure;

7            (b)   Awarding compensatory damages in favor of Plaintiff and the other Class

8                  members against all defendants, jointly and severally, for all damages

9                  sustained as a result of defendants' wrongdoing, in an amount to be proven at

10                 trial, including interest thereon;

11           (c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred

12                 in this action, including counsel fees and expert fees; and

13           (d)   Such other and further relief as the Court may deem just and proper.

14                          **JURY TRIAL DEMANDED**

15     Plaintiff hereby demands a trial by jury.

16

17 Dated: December 17, 2008        BARROWAY TOPAZ KESSLER MELTZER &
                                     CHECK, LLP

18

19                                   Alan R. Plutzik, Of Counsel (Bar No. 077758)

20                                   L. Timothy Fisher, Of Counsel (Bar No. 191626)
                                  2125 Oak Grove Road, Suite 120

21                                   Walnut Creek, CA 94598
                                  Telephone: (925) 945-0770

22                                   Facsimile: (925) 945-8792

23                                  - and -

24                                 **BARROWAY TOPAZ KESSLER MELTZER &
                                CHECK, LLP**

25                                   D. Seamus Kaskela
                                  skaskela@btkmc.com

26                                   David M. Promisloff
                                  dpromisloff@btkmc.com

27                                   280 King of Prussia Road
                                  Radnor, PA 19087

28                                   (610) 667-7706
                                  (610) 667-7056 (fax)

CLASS ACTION COMPLAINT

## CERTIFICATION

I, Terrence Popyk, ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

    1.      Plaintiff has reviewed the Complaint, and authorizes its filing.

    2.      Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

    3.      Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition and trial, if necessary.

    4.      Plaintiff's purchase and sale transaction(s) in the **Taleo Corporation (Nasdaq: TLEO)** security that is the subject of this action during the Class Period is/are as follows:

| Type of Security (common stock, preferred, option, or bond) | Number of Shares | Bought (B) | Sold (S) | Date | Price per share |
|---|---|---|---|---|---|
| Common | 52 | (B) | | 06/27/08 | $19.33 |
| Common | 6 | | (S) | 10/23/08 | $12.28 |
| | | | | | |
| | | | | | |
| | | | | | |

(Please list additional purchase and sale information on a separate sheet of paper, if necessary)

    5.      Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

    6.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as described below: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

    7.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed this _13_ day of _December_, 2008.

TERRENCE POPYK